Rempel, *v.* Nationwide Life Insurance Company, Inc. et al., Appellants.

88

Submitted November 15, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

*Charles H. Alpern,* and *Weis & Weis,* for appellant.

*Michael J. Seymour,* and *Feczko & Seymour,* for appellee.

OPINION BY CERCONE, J., April 3, 1974:

This appeal arises from a judgment in trespass totaling $6,463.80 against both appellants, Nationwide and its agent, Mr. McGibbeny. This action, which was joined at trial with an assumpsit action based upon a contract of insurance, was brought by the widow of the insured, and alleged that Mr. McGibbeny had either fraudulently or negligently misrepresented the coverage afforded by the policy while acting within the scope of his employment with Nationwide. The facts of the case, cast in the light most favorable to the plaintiff-appellee, are as follows:

In April of 1961 Mr. McGibbeny, upon request, sold to Mr. Rempel, deceased, a Nationwide "mortgage protector" policy on Mr. Rempel's life. This was basically a thirty year, decreasing term, life insurance policy whereby the lump sum death benefit would approximately equal the amount of the outstanding first mortgage on the insured's home. At the end of the thirty year term the life insurance and the mortgage would co-terminate. Some time shortly after this policy went into effect, Mr. Rempel learned through an agent of a competitor of Nationwide that, for a "few dollars more per month," he could receive the same mortgage protection and also purchase $5,000 worth of whole life insurance. This plan interested Mr. Rempel, and he therefore asked Mr. McGibbeny if Nationwide offered similar protection for his family. Mr. McGibbeny inquired into the matter; and, consequently, Nationwide reissued a $5,000 whole life policy with a "twenty year family income rider." While the monthly premium on the original mortgage protector policy was $13.00, the premium on the new policy which replaced it was $16.75. Mr. Rempel continued to pay the premiums

until his death in 1970. Mrs. Rempel testified that when she contacted Mr. McGibbeny he told her that she had a very good policy and would receive approximately $16,000.00 from it. Since the balance remaining on the mortgage was $11,100.00, the estimate comported with her expectation of the policy's coverage. A few days later, however, Mr. McGibbeny informed her that the policy would provide a lump sum payment of only $10,400.00.

At trial, Mrs. Rempel testified that her husband had clearly indicated his desire to obtain the $5,000 additional whole life insurance; and, at the meetings with Mr. McGibbeny which she attended, the agent represented that he could secure the same protection for the "few dollars more" that Nationwide's competitor had offered. She also testified that, after Mr. McGibbeny presented them with a policy which he represented as fulfilling their wish, they never scrutinized it to determine whether it lived up to those representations. Mr. McGibbeny, of course, testified that no such representations had ever been made, and counsel for the defendants objected that, in any event, Mrs. Rempel's testimony thereto was barred by the Parol Evidence Rule. Plaintiff's counsel countered that the testimony was admissible because it was not offered to vary or contradict the express terms of the policy, but was offered to show that the agent had committed the tort of negligent misrepresentation causing damage to the plaintiff in the amount of $5,670.00 plus interest (representing the difference in value between the policy as represented and its value as written). The trial court directed a verdict for the plaintiff on her assumpsit action in the amount of $10,430.00 plus interest, an amount equal to the benefit provided under the policy at the time of Mr. Rempel's death. The jury also returned a verdict for the plaintiff against both defendants on the tort action in the amount requested. Both

defendants bring the instant appeal from the latter judgment. They again raise their parol evidence objection to the testimony of Mrs. Rempel concerning the negotiations prior to the issuance of the written policy, and also argue that, regardless, the clear weight of the evidence indicated that the Rempels could not have justifiably relied on any representations which might have been made by Mr. McGibbeny.[1]

## I.

The appellants first argue that the Parol Evidence Rule should have barred Mrs. Rempel's testimony regarding the agent's oral representations which were made prior to the issuance of the written contract of insurance. In support of this argument the appellants refer us to the Supreme Court's decision in *Bardwell v. The Willis Company*, 375 Pa. 503 (1953) where the Court stated that, "Merely bringing an action in trespass for deceit instead of in assumpsit for breach of contract will not suffice to circumvent the parol evidence rule." That case is similar to the instant case insofar as the alleged misrepresentations were made by an agent of the defendant while acting within the scope of his employment. Were it not for more recent decisions in Pennsylvania which cast serious doubt on the continuing validity of the principle announced in that decision, *Bardwell* might be dispositive of the instant appeal.

Professor Thayer long ago said with reference to the Parol Evidence Rule that, "Few things are darker than this, or fuller of subtle difficulties."[2] One principle does emerge rather clearly, however, and that is that the Parol Evidence Rule has no application unless the evidence of prior agreements is offered to

---

[1] It should be noted that this appeal presents no argument that the damages as awarded were improperly computed.

[2] Thayer, Treatise on Evidence at the Common Law 390 (1898).

alter, vary or contradict the terms of an integrated writing.[3] Equally well recognized is the fact that the rule as applied in modern courts is one of substantive contract law, rather than an exclusionary rule of evidence.[4] Many of the lingering difficulties to which Professor Thayer alluded can be directly attributed to the failure of courts to clearly recognize the significance of the change from the old view. To some extent this misunderstanding has derived from the continued use of the misnomer "Parol Evidence Rule".[5] While application of the rule necessarily carries with it some unusual procedural and evidentiary consequences,[6] fuller consideration reveals that an objection based upon the rule is essentially one of *relevance*. "The parol evidence rule is in almost all its aspects a rule of relevance based upon the substantive effect of integrating in a writing the terms of an agreement."[7] As Corbin elaborates, "Observe that [determining relevance] is never possible until the court is aware of the purpose for which the evidence is offered. If the purpose is a proper one and the evidence is relevant thereto, it is

---

[3] See, e.g., *International Milling Co. v. Hachmeister*, 380 Pa. 407 (1955) ; 3 Corbin on Contracts §573 (1960).

[4] See *Evans v. Otis Elevator Co.*, 403 Pa. 13 (1961) ; *Knirnschild v. Pittsburgh Brewing Co.*, 390 Pa. 606 (1957). See also *C. I. R. v. Danielson*, 378 F. 2d 771 (3d Cir.), cert. denied, 389 U.S. 858 (1967) ; 3 Corbin on Contracts §573 (1961) ; Restatement of Contracts, 2d, §239, Comment a ; 2 Henry, Pennsylvania Evidence §591 (1953).

[5] "The use of such a name for this rule has had unfortunate consequences, principally by distracting the attention from the real issues that are involved." 3 Corbin on Contracts §573 at p. 358 (1960). Indeed, the Restatement of Contracts, 2d, §239, which deals with the rule entitles the section "Effect of Integrated Agreements on Prior Agreements (The Parol Evidence Rule)."

[6] See Murray, The Parol Evidence Rule: A Clarification, 4 Duq. L. Rev. 337, 344 (1966).

[7] E. Morgan, Basic Problems in Evidence, Introduction (1962).

not rendered inadmissible by the fact that it may be *inoperative to add to or vary the legal effect of the writing.* If there is any proper purpose for which it is relevant . . . there is no rule of evidence that declares it inadmissible for the purpose for which it was offered, even though there may be a rule of substantive contract law that deprives it of some particular legal operation."[8] It follows, then, that since the prior statements and agreements are highly relevant, indeed material, to the issue of whether Mr. McGibbeny committed the tort of negligent misrepresentation, and since that testimony is not being offered to alter, vary or contradict the terms of the writing, the "Parol Evidence Rule" does not bar its admission into evidence. The continued application of the *Bardwell* doctrine to such cases serves only to perpetuate a principle logically inconsistent with the overwhelming weight of authority that the rule is one of substantive contract law, supra note 4.

The imputation of the agent's liability to the insurance company is also proper, once the fact of agency is established, regardless of the fact that the insurance company was a party to an integrated writing where no such insurance risk was undertaken. The Restatement of Agency, 2d, §257, Comment c provides that while a contract may not be varied or contradicted by parol, such evidence may "be introduced for the purpose of proving that the contract was obtained by means of untrue statements." Furthermore, it is universally true that a clause in an insurance contract which seeks to exculpate the insurer for torts committed by its agent while acting within the scope of his employment is void as against public policy.[9] This public policy cannot be meaningful if the law, while

---

[8] 3 Corbin on Contracts §573, n.1 (Supp. 1971).

[9] See 4 Couch on Insurance, 2d §26:433 (1960).

admitting the right, refuses to permit the injured policyholder to introduce any evidence that he has been wronged.[10] We, therefore, hold that the trial court, in admitting the testimony of the prior representations and agreements, did not fail to properly apply the "Parol Evidence Rule".

## II.

There can be no question that the jury could properly find that, in the light of Mr. McGibbeny's expertise and experience, he was negligent in failing to discern that the policy coverage did not meet the condition requested by the Rempels. The more difficult question was whether, given the fact that the Rempels had a copy of the policy, they could justifiably rely upon the representations made by the agent.[11] We note that the testimony indicated that it was customary for an agent, upon receipt of the policy from Nationwide, to explain the principal features of the contract to the insured. It seems more than unusual that the company should now argue that such explanations are unreliable. In any event we will not now hold that the insured must read the policy or be barred from any relief for negligent misrepresentations made by an agent of the insurer, especially since the representations of the

---

[10] In *Taylor v. Crowe*, 444 Pa. 471, 474 (1971), the court while holding that liability could not be imputed to an insurance underwriting group because the fact of agency was not adequately proved, went on to state, "We need not reach the question of whether, because of the peculiar nature of insurance contracts, parol evidence should be admissible to hold an insurance company liable for the negligent misrepresentation of its agents as to the coverage of a particular policy." See also 4 Couch on Insurance, 2d §26:433 (1960).

[11] No question was raised at trial or on appeal as to whether the Rempels' failure to read the policy, or at least scan it, could constitute contributory negligence. See Restatement of Torts, 2d, §522A.

agent, given his expertise, naturally tend to induce the insured to believe that reading the policy would be superfluous. Nor do we fail to recognize that establishing such a requirement would virtually eliminate the possibility of establishing a prima facie case of negligent misrepresentation by creating an insoluble dilemma for the plaintiff. If the insured failed to read the policy he would lose because he could not establish justifiable reliance; but, if he did read the policy he could not show that he in fact relied upon the representations of the agent with regard to its contents. We therefore hold that whether or not justifiable reliance has been established is a question of fact for the jury, to depend, inter alia, on the relative position of the parties, their expertise and experience. In the instant case, there was sufficient evidence for the jury to conclude that the Rempels justifiably relied upon the representations of Mr. McGibbeny.

Judgment affirmed.

———

DISSENTING OPINION BY JACOBS, J.:

I respectfully dissent. Where two parties enter into a written contract which they intend to be a final expression of their agreement, neither can vary the terms of the written agreement by proof of prior or contemporaneous oral representations unless the prior representations were omitted from the written contract as a result of fraud, accident, or mistake. *Nicolella v. Palmer,* 432 Pa. 502, 248 A.2d 20 (1968); *Bardwell v. Willis Co.,* 375 Pa. 503, 100 A.2d 102 (1953). The opinion of the majority here, in approving this cause of action for negligent misrepresentation based upon the sale of an insurance contract, effectively emasculates the parol evidence rule. The rule adopted by the majority will soon render written instruments of no value by increasing the temptations

to commit perjury and by permitting vague and fading memories[1] to control over the specific and immutable writing. Such has never been, and should not be, the policy of the laws of this Commonwealth.

I would hold that where the agreement is absolute and certain on its face,[2] the parol evidence rule cannot be circumvented merely by changing the form of action from assumpsit to one based upon negligent misrepresentation. *Bardwell v. Willis Co., supra.* See *National Cash Register Co. v. Modern Transfer Co.*, 224 Pa. Superior Ct. 138, 302 A.2d 486 (1973).

I would reverse the decision of the court below.

HOFFMAN, J., joins this dissenting opinion.

---

[1] In the instant case, Mrs. Rempel testified to occurrences clouded by the dust of 10 years.

[2] The amounts to be paid in case of death were clearly set forth on the first page of the policy and the first page of the "Family Income Rider."