389 A.2d 1123

**Joseph LeDONNE and Barbara LeDonne, his wife, Appellants,**

**v.**

**George KESSLER and Emily L. Kessler, his wife, Appellees.**

Superior Court of Pennsylvania.

Argued March 21, 1978.

Decided July 12, 1978.

282

David A. Martino, Bangor, for appellants.

Charles P. Eyer, Assistant District Attorney, Stroudsburg, for appellees.

Before HOFFMAN, CERCONE, PRICE, VAN der VOORT and HESTER, JJ.

HOFFMAN, Judge:

Appellants contend that the lower court erred in entering summary judgment because it believed the parol evidence rule removed all material factual issues from their trespass suit. We agree and reverse the order of the lower court.

On August 31, 1976, appellants, Joseph and Barbara Le-Donne, filed a second amended complaint[1] in trespass against appellees, George and Emily Kessler, in the Monroe County Court of Common Pleas. Appellants made the following pertinent allegations: On October 1, 1973, they purchased appellees' house and surrounding property in Ross Township, Monroe County, in reliance on appellees' fraudulent misrepresentations that the property had no water or sewer problems. In particular, appellees responded to specific questions by informing appellants that (a) the drainage problem in the septic system had been repaired, (b) the sundeck did not leak water, and (c) the cellar did not leak water; appellees deliberately made these false statements in order to induce appellants to execute the agreement of sale. Moreover, because appellees knew that appellants could not discover the defects through visual inspection of the premises, appellants depended upon appellees' good faith in making these assurances. When appellees prepared the agreement

---

1. The lower court had sustained preliminary objections in the nature of a demurrer to appellants' two previous complaints, but allowed appellants an opportunity to amend their complaint each time.

of sale, they fraudulently and intentionally omitted the representations concerning water and sewer problems. In reliance on appellees' representations, appellants executed the agreement of sale and a deed. Shortly after appellants moved into their new house, the septic system backed up, and the sundeck and cellar started to leak water. As a result, appellants sustained serious damage to their rugs, sewing machine, and other unspecified personalty as well as the loss of the use of the sundeck and cellar. Appellants asked for damages in excess of $10,000.

Appellants also filed depositions in support of their complaint. Joseph LeDonne described in detail his inspections of appellees' premises prior to execution of the agreement of sale. On one occasion, his wife's father, a carpenter, accompanied him. Both LeDonne and the carpenter noticed black spots underneath the sundeck and on the plywood paneling in the garage directly beneath the sundeck; these spots, in the carpenter's estimation, definitely suggested a water leakage problem. Joseph LeDonne questioned appellee, George Kessler, about the black spots; Kessler responded that although there had been a leak around the chimney, the problem had been corrected. When Joseph LeDonne, his father-in-law, and George Kessler inspected the premises outside the house, LeDonne specifically asked about the septic system. Kessler assured him that the septic system functioned properly, despite a small problem during the previous summer. Kessler showed LeDonne a four inch plastic pipe protruding from the ground; this pipe constituted part of the septic system. Kessler also pointed out a purported drainage field which had been installed to correct the prior septic system problem. LeDonne observed that a portion of the ground had been backfilled and was now fairly smooth; instead of grass, shale covered this segment. LeDonne's observations, coupled with Kessler's representations, satisfied his apprehensions.

In her deposition, Barbara LeDonne confirmed the presence of black spots underneath the sundeck and on the plywood paneling in the garage; these spots made both

LeDonnes and her father suspicious of water leakage problems and prompted their inquiries to appellees. Mrs. Le-Donne also stated that an inspection of the cellar, which immediately adjoined the garage, revealed damp conditions which again suggested a water leakage problem. These wet conditions triggered questions concerning possible water leakage problems; appellees again proffered reassuring answers.

On September 10, 1976, appellees filed preliminary objections in the nature of a demurrer to the second amended complaint as well as a motion for summary judgment. Both documents asserted that the parol evidence rule barred prosecution of appellants' trespass suit.[2] In particular, appellees relied upon paragraph number six of the agreement of sale: "The parties have full knowledge of the physical appearance of the land and buildings and of the value thereof and there are no verbal representations as to character or quality." Also, the two page agreement stipulated that the parties had read its provisions before signing.

On March 21, 1977, the lower court held that the parol evidence rule prohibited oral testimony in contradiction of the statement in paragraph number six that "there are no verbal representations as to character or quality." Without parol evidence of appellees' alleged pre-agreement oral misrepresentations, no material factual issues remained for the lower court's resolution. Accordingly, the lower court ordered the prothonotary to enter summary judgment unless appellants filed another amended complaint within twenty days. Appellants declined this opportunity; instead, they petitioned the lower court to enter summary judgment so that an appeal could test whether the second amended complaint stated a cause of action. On May 13, 1977, the lower court granted summary judgment. This appeal followed.

2. In their answer filed in response to appellants' original complaint, appellees also denied that appellants ever asked specific questions concerning water or sewer problems or that appellees made any representations in response. Appellees also averred that any water or sewer problems presently plaguing appellants' property did not arise until after appellants took possession of the property.

Appellants contend that the lower court erred in granting summary judgment on the basis of the parol evidence rule. Pa.R.Civ.P. 1035; 42 Pa.C.S. § 1035, authorizes the entry of summary judgment ". . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . ." *See also Cercone v. Cercone,* 254 Pa.Super. 381, 386 A.2d 1. The parties agree that if the parol evidence rule bars testimony concerning appellees' alleged oral misrepresentations, then no material issues require a factfinder's resolution. Therefore, we must determine the applicability of the parol evidence rule to the instant case.

Succinctly stated, the purpose of the parol evidence rule is ". . . to preserve the integrity of written agreements by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous [or prior] oral declarations." *Rose v. Food Fair Stores, Inc.,* 437 Pa. 117, 120–21, 262 A.2d 851, 853 (1970). "Where parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement." *Gianni v. Russell & Co.,* 281 Pa. 320, 323, 126 A. 791, 792 (1924). In *Bardwell v. The Willis Co.,* 375 Pa. 503, 506, 100 A.2d 102, 104 (1953), our Supreme Court articulated the following definition of this rule:

"Where the alleged prior or contemporaneous oral representations or agreements concern a subject which is specifically dealt with in the written contract, and the written contract covers or purports to cover the entire agreement of the parties,[3] the law is now clearly and well settled that in

3. "The parol evidence rule, generally speaking, does not apply to receipts, letters, statements or books of account and other writings which do not purport to be a complete contract or vest or extinguish a legal right. *Wagner v. Marcus,* 288 Pa. 579, 136 A. 847; *Garrison v. Salkind,* 285 Pa. 265, 132 A. 125; cf. *Newland v. Lehigh Valley R.R. Co.,* 315 Pa. 193, 173 A. 822." (footnote in original).

the absence of fraud, accident or mistake the alleged oral representations or agreements are merged in or superseded by the subsequent written contract, and parol evidence to vary, modify or supersede the written contract is inadmissible in evidence. *Phillips Gas and Oil Co. v. Kline*, 368 Pa. 516, 519, 84 A.2d 301; *Grubb v. Rockey*, 366 Pa. 592, 79 A.2d 255; *Walker v. Saricks*, 360 Pa. 594, 63 A.2d 9; *Gianni v. Russell & Co., Inc.*, [supra]; *Speier v. Michelson*, 303 Pa. 66, 154 A. 127; *O'Brien v. O'Brien*, 362 Pa. 66, 66 A.2d 309; *Russell v. Sickles*, 306 Pa. 586, 160 A. 610." *See also Nicolella v. Palmer*, 432 Pa. 502, 248 A.2d 20 (1968); *United Refining Co. v. Jenkins*, 410 Pa. 126, 189 A.2d 574 (1968); *National Cash Register Co. v. Modern Transportation Co.*, 224 Pa.Super. 138, 302 A.2d 486 (1973).[4]

While our courts have applied the parol evidence rule in a wide variety of contexts, concentration upon cases involving agreements of sale and similar property transactions will expedite analysis of the rule's application in the instant case. Fortunately, our Court, per PRICE, J., has recently undertaken a comprehensive review of these cases. *See National Building Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 381 A.2d 963 (Allocatur denied April 17, 1978). Borrowing from *Byler*, we will recapitulate the facts and holdings of the pertinent cases and then fit the case at bar into the pattern established by *Byler* and its predecessors.

In *Bardwell v. The Willis Co.*, supra (hereinafter *Bardwell*), defendants leased property to the plaintiffs for use in plaintiffs' bottling business. The written lease specifies that the lessees had examined the premises and found them to be in sound condition, that they had not received any warranty as to the condition or repair of the premises for the intended use, and that the lease contained the entire agreement between the parties. When the premises proved to be

---

4. This statement of the rule and the substantive policies which inform it makes clear that the name "parol evidence rule" is a misnomer. Rather than an exclusionary rule of evidence, the rule in fact concerns substantive contract law. See *Rempel v. Nationwide Life Ins. Co.*, 227 Pa.Super. 87, 323 A.2d 193 (1974), aff'd, 471 Pa. 404, 370 A.2d 366 (1977); 3 Corbin on Contracts § 573 (1961).

unsuitable for their bottling business, the lessees sued in trespass. The complaint alleged that the defendants had orally represented that the premises would be fit for a bottling business, and that plaintiffs had entered into the lease in reliance on these representations. The complaint did not specify the particular defects which made the premises unusable. The lower court sustained the lessors' preliminary objections in the nature of a demurrer, and the Supreme Court affirmed on the basis of the parol evidence rule. The Court emphasized that the alleged oral misrepresentations concerned matters fully and specifically covered in the integration clause of the written agreement. Observing that admission of the proffered parol evidence would make these contractual clauses worthless, the Court stated: "What is the use of inserting such clauses in agreements if one of the parties thereto is permitted to prove by oral testimony that he didn't examine and wasn't familiar with the premises or their condition, or that they would not meet the standards which plaintiffs require? There is no averment by plaintiffs that these clauses in the lease were inserted by fraud, accident or mistake; or (we repeat) that any representation was omitted by fraud, accident or mistake; or that the lease did not contain the entire contract and agreement between the parties. Merely bringing an action in trespass for deceit instead of in assumpsit for breach of contract will not suffice to circumvent the parol evidence rule. If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract or lease, they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely, and they should have omitted the provisions which they now desire to repudiate and nullify." 375 Pa. at 508–09, 100 A.2d at 105.

In *Berger v. Pittsburgh Auto Equipment Co.*, 387 Pa. 61, 127 A.2d 334 (1956), the Supreme Court confronted a factual pattern analogous to *Bardwell*, but sufficiently distinguishable to permit a different result. The parties entered into a

written lease whereby defendant-lessee agreed to rent the second floor of a certain property. Plaintiff-lessor knew that the lessee needed this property to store automobile parts which weighed more than 300 pounds per square foot of flooring; the lessor assured the lessee that the flooring had been recently strengthened and would support the lessee's goods. In reliance on this representation, the lessee executed the lease. A contemporaneous written collateral agreement stated that: "[t]he tenant has inspected the premises and accepts the property in its present condition." Subsequently, the floor proved incapable of withstanding a weight of 125 pounds per square foot. When the lessee vacated the premises and stopped paying rent, the lessor confessed judgment. However, upon the lessee's petition, the lower court opened the judgment, and the Supreme Court affirmed. In particular, the Supreme Court ruled that the collateral agreement concerning the inspection of premises only bound the lessee as to any reasonably ascertainable conditions. Because expert tests rather than visual inspection were necessary to determine the strength of the flooring, the Court found the contractual integration clause inapplicable and, therefore, the parol evidence rule inoperative.[5] *See also Highmont Music Corp. v. J. M. Hoff-*

5. In *Byler*, we stated that the facts of *Bardwell* and *Berger* could not be materially distinguished. Upon re-examination of these cases, we now perceive significant difference. In *Bardwell*, the contract expressly provided that the lessees had inspected the premises and had not received any warranties as to the fitness of the premises for the intended use. Nevertheless, the lessees' trespass complaint alleged only that the lessor had represented that the premises were fit for the intended use; the lessees did not particularize their complaint and, thus, did not allege that the purported defects in the premises could not be discovered by a reasonable inspection. In short, the contractual integration clause in *Bardwell* covered precisely the problem about which the lessees later complained and explicitly negated the existence of any relevant representations. In *Berger*, by contrast, the contractual integration clause only covered conditions reasonably apparent from an inspection of the premises. The lessee contended that the particular defect in the premises—the strength of the flooring—could not be discovered by visual inspection, but required expert testimony. The integration clause and the allegations in the complaint in *Berger*, therefore, did not share the same congruence as the integration clause and allegations in *Bardwell*. For the signifi-

*man Co.,* 397 Pa. 345, 155 A.2d 363 (1959) (hereinafter *Highmont*).[6] *National Building Leasing, Inc. v. Byler,* supra (hereinafter *Byler*), is the most recent link in the chain of cases which commences with *Bardwell.* In *Byler,* the defendants entered into a written agreement to sell certain realty to plaintiff. Prior to plaintiff's inspection of the premises, the defendants allegedly demolished a number of buildings and deposited the resulting debris and other waste materials in a large hole located on the realty; defendants then filled the hole with soil and covered it with vegetation. Despite knowledge that plaintiff intended to construct a trucking terminal on the premises, defendants allegedly concealed the existence of the debris-filled hole and even informed plaintiff that the debris had been removed from the premises. The parties then executed an agreement of sale which provided that plaintiff had inspected the property and had agreed to buy the property as a result of this inspection and not in reliance on any representations. The agreement also specified that it represented the complete understanding of the parties and that no other oral representations had been made concerning the sale. After plaintiff occupied the land, it discovered the existence of the hole and sued to recover the cost of removing the debris. Our Court reversed the lower court's order sustaining the defendants' preliminary objections on the basis of the parol evidence rule. In an attempt to reconcile *Bardwell* and *Berger,* we observed that as a general rule, an allegation that fraud or misrepresentation induced the contract would enable a party to escape the confines of the parol evidence rule. *See Highmont,* supra; *Berger,* supra. If a party failed to make such an allegation, but only averred that the contract did not contain certain additional oral terms, then an allegation that the terms had been fraudulently omitted from the contract would be necessary. *See Bardwell,* supra.

cance of this factual variance between the two cases, see note 10 and accompanying text, *infra.*

**6.** *Highmont* involved facts and analysis identical in all material respects to *Berger.*

Because the buyer in *Byler* alleged that his sellers' oral misrepresentation induced it to enter into the contract, we found the parol evidence rule inoperative.[7]

In the instant case the lower court, relying upon *Pisiechko v. Diaddorio,* 230 Pa.Super. 297, 326 A.2d 608 (1974), entered summary judgment on the basis of paragraph number six in the agreement of sale which provides: "The parties have full knowledge of the physical appearance of the land and buildings and of the value thereof and there are no verbal representations as to character or quality." The lower court interpreted the underlined portion of paragraph number six as a complete integration clause which barred testimony of *all* oral representations concerning the instant land transaction. Appellant asserts, and we agree, that this interpretation cuts too broadly and ignores the interrelationship between the first half of paragraph number six and the subsequent underlined segment.[8] Instead, reading the clause as a whole, we believe that paragraph number six only denies the existence of verbal representations as to the character or quality of land and building conditions reasonably apparent from an inspection of the premises.

Our narrowing construction of paragraph six affords appellants some, but not total, relief. Appellants' allegations concerning the repair of the septic system do not contradict paragraph number six, but their allegations concerning the sundeck and cellar do conflict with this clause. Because the septic system was underground, appellants could not have

---

7. We note that, contrary to our statement in *Byler,* the lessees in *Bardwell* did allege that they entered into the lease in reliance upon the lessors' fraudulent misrepresentations. Consequently, the difference in result and analysis in *Bardwell* and *Berger* cannot be explained solely on the basis of a failure to allege fraudulent inducement in *Bardwell,* but not *Berger.*

8. Contrast the broad integration clause in *Pisiechko v. Diaddorio,* supra, upon which the lower court erroneously relied in construing paragraph six: "THIS AGREEMENT contains the whole agreement between the parties hereto and there are no other terms, obligations covenants, representations, statements or conditions oral or otherwise, of any kind whatsoever." Supra at 303, 326 A.2d at 612.

possessed full knowledge of its physical appearance and adequacy and could not have readily ascertained whether a drainage problem existed. They observed a purported drainage field, but this observation would not reasonably put them on notice that the subterranean septic system still malfunctioned. Indeed, the opposite inference would be more logical. Because appellants could not discern through visual inspection alone the existence of the septic system problem of which they now complain, the wording of paragraph six does not bar the admission of evidence of appellees' alleged misrepresentations concerning septic system problems. *See Highmont,* supra; *Berger,* supra.[9]

Appellants' allegations concerning the sundeck and cellar stand on a different footing. Their depositions reveal that when they inspected these locations, they discovered the very conditions involved in the alleged oral misrepresentations. Their inspection revealed black spots underneath the sundeck and on plywood panels in the garage and a dampness in the cellar which strongly suggested the existence of water leakage problems. Despite this knowledge of the physical appearance of the sundeck and cellar, they signed an agreement stipulating that they had received no verbal representations as to the condition or quality of these areas. Therefore, we conclude that paragraph six precludes oral testimony of pre-agreement representations concerning the quality and condition of the sundeck and cellar.

Alternatively, appellants contend that even if evidence of oral representations concerning the sundeck and the cellar would contradict the wording of paragraph six of the sale agreement, their allegation that these representations in-

**9.** Compare the Supreme Court's observation in *Berger*: " . . . in the present case, defendant could not have been expected, nor would it have been practically feasible for it, to make tests of the strength of the flooring, a condition which could have been ascertained only by an expert engineer. This is especially true in view of defendant's testimony that plaintiff's agent had pointed out steel beams and posts which he claimed had been recently installed for the purpose of strengthening the floor, with the further assurance that he himself had used the premises in the past for the storage of heavy furnaces and equipment." Supra 387 Pa. at 66, 127 A.2d at 336.

duced them to enter into the contract sufficed to render the parol evidence rule inapplicable. In *Byler*, our Court stated: " . . . [E]vidence that one of the parties was induced to enter the contract through fraud or misrepresentation is not barred by the parol evidence rule." Supra, 252 Pa.Super. at 374, 381 A.2d at 965. Given the facts in *Byler*, the application of this abstract principle made sense. The removal of the debris from the premises constituted a basic precondition to the agreement of sale. The buyer's inspection of the physical premises disclosed no reason to suspect that the sellers had not removed the debris; indeed, the inspection seemingly *confirmed* the veracity of the sellers' representations. Therefore, at the time the buyer executed the agreement of sale, it reasonably assumed that the precondition had been performed and that contractual protection on this matter would be superfluous. To invoke the parol evidence rule to cover a situation which the buyer could not have envisioned at the time of contracting would be manifestly unfair and would affirmatively aid the perpetration of fraud against an unsuspecting buyer.

■■ The instant case presents facts materially different from *Byler* and demonstrates why mechanical application of *Byler's* abstract principle in this case would be inappropriate and, to the contrary, would undermine the policies underlying the parol evidence rule. Here, appellants' inspection of the premises revealed the very problem which they now protest: water leakage in the sundeck and cellar. At the time of executing the agreement of sale, appellants had every reason to insist upon contractual protection against this readily discernible threat. Indeed, even accepting their allegation that these assurances induced them to enter the contract, appellants were particularly imprudent not to insist upon written contractual protection. Instead, appellants signed an agreement in which they explicitly waived their right to rely upon any oral representations they may have received concerning the condition or quality of the physical premises. In short, appellants' allegation that misrepresentations concerning the sundeck and cellar induced the agree-

ment of sale has little functional relevance in the instant case. If we seriously desire to preserve the integrity of written contracts, *Rose v. Food Fair Stores, Inc.*, supra; *Gianni v. R. Russell & Co.*, supra, then we must insist upon the application of the parol evidence rule when a party knows about the existence of substantial problems, yet contractually stipulates that he has received no promises about these problems. Rather then rigidly apply the principle of *Byler* and allow circumvention of the substantive policies of the parol evidence rule by pleading niceties, we should balance the extent of the party's knowledge of objectionable conditions derived from a reasonable inspection against the extent of the coverage of the contract's integration clause in order to determine whether that party could justifiably rely upon oral representations without insisting upon further contractual protection or the deletion of an overly broad integration clause.[10] In the case at bar, appellants actually detected the existence of water problems in the sundeck and cellar, but nevertheless signed a contract stipulating that they received no representations concerning these ostensible defects. Consequently, appellants have failed our test.

▪ Even if our Court decides that a bare allegation of fraudulent inducement is insufficient to nullify the parol evidence rule in the instant case, appellants contend that another of their averments defeats the rule's application: allegedly, appellees fraudulently *omitted* the oral representations concerning the sundeck and cellar from the agreement of sale. Again, case language, read outside of a particular factual matrix, supports appellants' contention in

10. This model harmonizes the results in *Bardwell, Berger,* and *Byler.* In *Bardwell,* the integration clause explicitly denied the existence of the representation which the lessees later attempted to invoke. The lessees could not justifiably rely upon prior oral representations, yet sign a contract denying the existence of these exact representations. Thus, *Bardwell's* requirement that the lessees allege fraud, accident or mistake in the *execution* of the contract made good sense under the circumstances of that case. In *Berger* and *Byler,* the contract clause did not deny the existence of any representation concerning the subsequently discovered latent defect. Thus, an allegation of fraud in the inducement of the contract rather than in its execution logically sufficed to render the parol evidence rule inapplicable.

the abstract; again, this language would vitiate the parol evidence rule if applied blindly to the instant case. *Bardwell*, does state that " . . . [f]raudulent misrepresentations may be proved to modify or avoid a written contract if it is averred and proved that they were omitted from the (complete) written contract by fraud, accident or mistake." Supra 375 Pa. at 507, 100 A.2d at 104. *See also Nicolella v. Palmer,* supra; *National Cash Register Co. v. Modern Transportation Co.,* supra; *Lloyd & Eliott, Inc. v. Lang,* 118 Pa.Super. 190, 180 A. 74 (1935). However, appellants aver no specific facts in support of their allegation of fraudulent omission; they assert only that appellees prepared the agreement of sale and fraudulently omitted the disputed representations. Appellants do not aver that appellees deleted the alleged representations or inserted paragraph number six *after* the execution of the agreement of sale. Nor do appellants allege that the two page agreement of sale form, complete with multiple typed interlineations, was too complicated to read or that appellees unconscionably traded upon superior bargaining position to obtain the integration clause. In short, appellants fail to explain why they ignored the most basic protection against fraud available: reading the agreement before signing it and insisting upon the deletion of offending provisions or the insertion of desired guarantees. If appellants did perform the minimal duty of reading the agreement of sale, then why did they not protest the inclusion of paragraph number six or the exclusion of the alleged oral representations? As the Supreme Court stated in *Bardwell*: "If plaintiffs relied on any understanding, promises, representations or agreements made prior to the execution of the written contract or lease, they should have protected themselves by incorporating in the written agreement the promises or representations upon which they now rely, and they should have omitted the provisions which they now desire to repudiate and nullify." Supra 375 Pa. at 508–09, 100 A.2d at 105. *See also Lloyd & Eliott, Inc. v. Lang,* supra. Because the integrity of written contracts requires, at a minimum, that parties read real estate contracts before signing, we hold that a mere allega-

tion of fraudulent omission is insufficient unless a party avers facts explaining why perusal of the agreement before execution did not afford adequate protection against the alleged deliberate omission. In the case presently before us, appellants have not pleaded the requisite factual allegations.

Recapitulating: the parol evidence rule bars oral testimony in contravention of paragraph six of the agreement of sale designed to show that appellees misrepresented water leakage problems connected with the cellar and sundeck. Appellants' inspection of the premises revealed the existence of these problems, yet appellants refused to insist upon contractual protection and, to the contrary, expressly waived all right to rely upon oral assurances. However, inspection of the premises could not have adequately disclosed the allegedly deficient state of repair of the septic system. Accordingly, paragraph six cannot be construed to bar testimony or oral representations concerning this condition. Therefore, we reverse the order of the lower court denying summary judgment and remand for proceedings consistent with this opinion.[11]

11. Appellants have not contended at any time that the parol evidence rule does not apply to this suit because they sued in trespass rather than assumpsit. *See Rempel v. Nationwide Life Ins. Co.*, supra. But see *Bardwell*, supra. Therefore we will not consider the applicability of *Rempel* to the instant case. *See Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974). In *Rempel*, a widow sued an insurance company in trespass on the basis of its agent's alleged misrepresentations concerning the extent of the coverage provided by her husband's policy. According to the widow, her husband made an application for an insurance policy in reliance on the agent's oral representation that the policy would pay off $5,000 over and above the mortgage balance on the insured's house at the time of his death. However, the written policy, received weeks after the insured signed the application form and the agent explained the policy, did not contain the expected coverage; instead, a rider which was attached to the policy and which required mathematical computations to implement limited coverage to less than the mortgage balance. Our Court held that the parol evidence rule did not apply when a party sued in trespass rather than assumpsit. (But see Dissenting Opinion by JACOBS, J., now P. J., in which HOFFMAN, J., joined). On appeal, our Supreme Court affirmed. A plurality of the Court per MANDERINO, J., noted, but did not decide, the issue of the parol evidence rule's applicability in trespass cases. Instead, the plurality opinion treated the widow's action as a request for reformation of

Order reversed and case remanded for proceedings consistent with this opinion.

PRICE, J., concurs in the result.

JACOBS, President Judge, and SPAETH, J., did not participate in the consideration or decision of this case.

the policy. Emphasizing the peculiar nature of insurance contracts, the plurality pointed out that the contract in question was highly complex and that Rempel did not receive the actual policy until weeks after all relevant bargaining and discussion had closed with the signing of the application form. Under these circumstances, an insured has no duty to read the policy and to detect inconsistencies between the alleged representation and the actual extent of the policy's coverage. An insurance case such as *Rempel* may well be *sui generis* and of limited precedential value in a case involving parties of equal bargaining power and sophistication. Without a lower court's consideration of *Rempel's* reach and the assistance of briefs by opposing counsel, it would be inadvisable to consider this issue *sua sponte*. See *Dilliplaine v. Lehigh Valley Trust Co.*, supra.