## Glover v. Deem

C.P. of Washington County, no. 2003-2683.

*Jeffery Olup,* for plaintiff.
*William Johnson,* for defendant.

MOSCHETTA, *J.,* August 23, 2005—

### FINDINGS OF FACT

After a non-jury trial in the above captioned matter, the court makes the following findings of fact:

(1) Plaintiffs, John D. Glover and Linda A. Glover, are adult individuals and husband and wife, residing at 2168 E. National Pike, Scenery Hill, PA 15360.

(2) Defendants, Thomas R. Deem and Laurie A. Deem, are adult individuals and husband and wife, currently residing at 355 Amos, Scenery Hill, PA 15360.

(3) On or about September 7, 2001, the parties entered into a written agreement of sale dated August 26, 2001 for the purchase and sale of the real estate and premises located at 2168 E. National Pike, Scenery Hill, PA 15360, whereby the Glovers agreed to purchase, and the Deems agreed to sell, the subject premises for $95,000.

(4) Prior to executing the agreement, the Deems executed a seller disclosure statement dated August 4, 2001.

(5) The Glovers believed that the information provided in the narrative was contained in the disclosure, furnished

by the Deems to their realtor for review and consideration by prospective purchasers, including the Glovers.

(6) Pursuant to the disclosure, the Deems affirmatively represented:

(a) the property was serviced by an individual on-lot system;

(b) a newer leach bed was apparently installed in 1993;

. . .

(d) the Deems answered "no" to the question, "Are you aware of any leaks, backups or other problems relating to any of the plumbing, water and sewage-related items?"

(7) The Deems did not experience any septic system problems while residing at 2168 E. National Pike.

(8) The Deems affirmatively represented that, "The septic leach field had also been recently improved." Also, in the disclosure statement, in response to the question, "[w]hen was the septic system, holding tank or cesspool last serviced?" the Deems answered, "October 2000, new leach bed."

(9) The Deems installed a new leach field at 2168 E. National Pike in 1993, however, they did so without securing the requisite Department of Environmental Protection permits.

(10) The agreement contains no specific reference to an on-site sewage disposal system; it merely references an "individual on-lot sewage disposal inspection contingency."

(11) Notwithstanding the lack of specific reference in the agreement, the Deems represented to the Glovers that an adequate on-lot system and a new leach bed serviced the property.

(12) The Glovers promptly pursued a septic dye test on September 7, 2001, the results of which ostensibly concluded that the septic system was working properly on that date and at that time, under apparently warm and dry conditions. However, the report went on to note:

"Since any historic information of the septic system was not available, I must assume that the system was functioning properly on the day of the inspection . . . This test is a check of the septic system to see if there is a dye breakout on the day of the test only. It is assumed by Essential Home Inspections, and also the person performing the septic test, that the property has a proper septic tank and leach field. Essential Home Inspections and the person performing the septic test cannot be held responsible for septic systems that drain into hidden areas or underground and could not have been seen during the septic test."

(13) The Glovers moved into the house at 2168 E. National Pike on October 19, 2001.

(14) The septic system worked properly between October 19, 2001 and mid-2002.

(15) Subsequently, in June 2002, it suffered complete drain field failure.

(16) After the septic system failed, the septic tanks required weekly pumpings which were performed between June 18, 2002 and November 5, 2002 at a cost of $90 per pumping.

(17) These pumpings remained necessary until a large permanent holding tank was installed on the property.

(18) The tanks were pumped 21 times for a total cost of $1,890.

(19) The Glovers installed a new 3,900 gallon septic tank system in November of 2002 at a cost of $7,895.

(20) The new 3,900 gallon tank installed needs to be pumped approximately once a month at a cost of $280 per pumping.

(21) As of July 2005, the total cost of pumping the holding tank has been $8,880.

(22) The Glovers will be required to pump the holding tank on a monthly basis until the township has a public sewage system in place.

## CONCLUSIONS OF LAW

(1) Both parties filed "findings of fact and conclusions of law briefs" with the court prior to trial. In their briefs, the parties contemplate the admissibility of parol evidence to show the purchaser plaintiffs' justifiable reliance on the defendant sellers' representations regarding the septic system at 2168 E. National Pike.

(2) The admissibility of the parol evidence is at issue in this case because the signed agreement contained integration and release provisions stating that the written agreement comprised the entire agreement between the parties, and that there were no other terms or conditions, oral or otherwise, pertaining to the sale of the property.

(3) The purpose of the parol evidence rule is to preserve the integrity of written agreements by prohibiting the contracting parties from altering the import of their contract through the use of contemporaneous or prior oral declarations. *LeDonne v. Kessler,* 256 Pa. Super. 280, 286, 389 A.2d 1123, 1126 (1978).

(4) The Real Estate Seller Disclosure Law, enacted December 20, 2000, involves residential real estate transactions. 68 Pa.C.S. §7302.

(5) The Disclosure Law applies to this case, which involves the sale of a residential home.

(6) The Disclosure Law states that any seller who negligently violates or fails to perform his or her duties under the law "shall be liable to the buyer as a result of a violation of this chapter." 68 Pa.C.S. §7311.

(7) Prior to the enactment of the Disclosure Law, a line of cases following *LeDonne* permitted the admission of parol evidence, such as, oral representations, into evidence to support claims of fraudulent or negligent misrepresentation in real estate transactions. See *1726 Cherry Street Partnership v. Bell Atlantic Properties Inc.,* 439 Pa. Super. 141, 653 A.2d 663 (1995); *Myers v. McHenry,* 398 Pa. Super. 100, 580 A.2d 860 (1990); *Mancini v. Morrow,* 312 Pa. Super. 192, 458 A.2d 580 (1983).

(8) The Disclosure Law, however, does not completely eclipse the *LeDonne* line of cases. The final sentence of section 7311 states that "this subsection shall not be construed to restrict or expand the authority of a court to impose punitive damages or apply other remedies applicable under any other provision of law."

(9) Under the *LeDonne* line of cases, whether or not a court based its decision to admit or reject oral evidence of misrepresentation in real estate transactions involved balancing the extent of a party's knowledge of the objectionable condition, derived from a reasonable inspection, against the coverage of the contract's integration clause to determine whether a party could justifiably rely on the oral representations without insisting on further contractual protections. *Blumenstock v. Gibson,* 811 A.2d 1029, 1036 (Pa. Super. 2002), citing *LeDonne v. Kessler,* 256 Pa. 280, 389 A.2d 1123.

(10) In a recent Allegheny County Court of Common Pleas decision, *Vaughn v. Drab,* AR04-2321 (Allegheny Cty. 2005), the Honorable R. Stanton Wettick discussed the Disclosure Law and its applicability to residential real estate transactions.

(11) In *Vaughn,* Judge Wettick explained that the Disclosure Law was enacted to provide broader relief to residential homebuyers, beyond the protections offered by *LeDonne.*

(12) The Disclosure Law expanded a seller's obligations and a buyer's remedies in three ways: (1) by requiring disclosure of specified information and allowing a buyer to pursue a claim without convincing a court that the seller's silence is a fraudulent misrepresentation, (2) by allowing a buyer to recover damages caused by misstatements or omissions on the property disclosure statement that may be known to the seller and (3) by allowing the buyer to recover damages when he proves by a preponderance of the evidence that the seller, when completing the disclosure statement, knew or had reason to know that a statement made was false or misleading. *Vaughn,* AR04-2321, page 5.

(13) Judge Wettick also remarked that when the Disclosure Law was enacted, members of the legislature had reason to know that residential home sales are almost always governed by standard agreements that include integration clauses.

(14) Because members of the legislature are familiar with the standard sales agreements used in residential home sales, Judge Wettick stated that the Disclosure Law should be construed to incorporate any representations made in the disclosure agreement into the sales agreement. *Vaughn,* AR04-2321, page 6.

(15) Both *LeDonne* and *Blumenstock* contain language indicating that release clauses should be treated similarly to integration clauses. In *Blumenstock,* the court states that a release clause will not automatically defeat a misrepresentation claim that could be recognized under the balancing test. *Blumenstock,* 811 A.2d at 1036.

(16) If the integration and release language standard to real estate contracts released sellers from liability, a release from liability would occur in virtually every real estate dispute and would render the Disclosure Law meaningless. *Vaughn,* AR04-2321, page 7.

(17) In the present case, the buyers read through the sellers' disclosure statement which clearly stated that a newer leach bed was installed on the property in 1993. In fact, the disclosure statement asked, "[w]hen was the septic system, holding tank or cesspool last serviced?" and the Deems answered, "October 2000, new leach bed."

(18) The buyers had this bed tested and no immediate problem was apparent.

(19) The buyers relied on the disclosure statement and oral representations of the sellers in purchasing the home.

(20) Evidence of oral representations regarding the septic system at 2168 E. National Pike are admissible to determine whether any fraudulent or negligent misrepresentations were made by the sellers in this real estate transaction.

(21) Prior to reaching a decision in this case, the court examined each of the counts against the defendants.

(22) The first count, fraudulent misrepresentation, requires that the plaintiff demonstrate by clear and convincing evidence the following: (1) that there was a representation, (2) the representation was material to the

transaction at hand, (3) the representation was made falsely, with knowledge of its falsity or with recklessness as to whether it is true or false, (4) the representation was made with the intent of misleading another into relying on it, (5) there was justifiable reliance on the misrepresentation, and (6) the resulting injury was proximately caused by the reliance. *Bortz v. Noon,* 556 Pa. 489, 500, 729 A.2d 555, 561 (1999).

(23) A material misrepresentation is a misrepresentation of such character that, if the statement had not been made, the transaction would not have been consummated. *Skurnowicz v. Lucci,* 798 A.2d 788, 793 (Pa. Super. 2002).

(24) The statement made by the Deems regarding the septic system was a material misrepresentation.

(25) The statement was made with recklessness as to whether or not the statement was true.

(26) However, the court finds that the Deems did not make the statements regarding the septic system with the intent of misleading the Glovers.

(27) For the foregoing reasons, the court finds in favor of the defendants with respect to Count I.

(28) The second count of the Glover's complaint is under the Unfair Trade Practices and Consumer Protection Law (UTPCPL). 73 P.S. 201 et seq.

(29) Any individual purchasing goods, including real estate, may bring a private action to recover damages caused by another's "act or practice declared unlawful" by the UTPCPL. 73 P.S. 201-9.2.

(30) In order to prove the catchall provision of the UTPCPL, the plaintiffs must prove all the elements of common-law fraud. *Skurnowicz,* 798 A.2d at 794.

(31) The court finds that the Glovers were unable to prove all the elements of fraudulent representation. Therefore, the court finds no violation of the UTPCPL.

(32) For the foregoing reasons, the court finds in favor of the defendants with respect to Count II.

(33) The third count alleged negligent misrepresentation. Negligent misrepresentation requires proof of: (1) a misrepresentation of material fact; (2) the misrepresentation must be made under circumstances in which misrepresenter ought to have known its falsity; (3) the misrepresentation must be made with intent to induce another to act on it; and (4) the misrepresentation must result in injury to party acting in justifiable reliance on the misrepresentation, Restatement (Second) of Torts §552, as adopted by the Pennsylvania Supreme Court in *Bortz,* 556 Pa. at 500, 729 A.2d at 561.

(34) The Deems knew or should have known of the material latent defects with the septic system at 2168 E. National Pike.

(35) The Deems knew or should have known that the written and oral representations they made concerning the condition of the septic system and the salability of 2168 E. National Pike were false and/or misleading.

(36) The Deems negligently misled the Glovers by failing to reveal to the Glovers that there were, or may have been, material latent defects in the septic system at 2168 E. National Pike.

(37) The Deems were negligent in failing to inform the Glovers that the installation/improvement of the leach bed at 2168 E. National Pike was performed without a permit.

(38) The Deems knew or should have known that the Glovers would rely upon the Deems' representations, with regard to their decision to purchase the subject premises at 2168 E. National Pike.

(39) The Deems were under a duty to the Glovers to disclose the existence of the material defects at 2168 E. National Pike.

(40) The Deems negligently failed to disclose to the Glovers the existence of those material defects.

(41) The Deems breached their duty to the Glovers through their failure to disclose the existence of the material defects at 2168 E. National Pike.

(42) As a direct and proximate result of the Deems' breach of their duty of care owed to the Glovers, the Glovers have been and will be forced to make repairs to 2168 E. National Pike.

(43) For the foregoing reasons, the court finds in favor of the plaintiffs with respect to Count III.

## VERDICT

And now, August 23, 2005, on Count I, fraudulent misrepresentation, the court enters a verdict for the defendants, Thomas and Laurie Deem and against the plaintiffs, John and Linda Glover. On Count II, violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the court enters a verdict for the defendants, Thomas and Laurie Deem and against the plaintiffs, John and Linda Glover. On Count III, negligent misrepresentation, the court finds for the plaintiffs, John and Linda Glover and against the defendants, Thomas and Laurie Deem, in the amount of $18,585.