J-A03011-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| FRANK MARANO AND DONALD MARANO | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| FULTON BANK, N.A., D/B/A FULTON FINANCIAL ADVISORS AND FULTON FINANCIAL ADVISORS, N.A. | |
| Appellee | No. 812 MDA 2016 |

Appeal from the Order Entered April 26, 2016
In the Court of Common Pleas of Lancaster County
Civil Division at No(s): CI-15-02499

BEFORE:  LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 04, 2017**

Frank Marano and Donald Marano (collectively, "Plaintiffs/Maranos") appeal from the order, entered in the Court of Common Pleas of Lancaster County, granting Appellees, Fulton Bank, N.A. (d/b/a Fulton Financial Advisors) and Fulton Financial Advisors, N.A., ("Defendants/Fulton"), summary judgment on their counterclaims, entering judgment in the amount of $300,151.04, plus accrued interest, against Frank Marano, and in the amount of $720,279.08, plus accrued interest, against Donald Marano, awarding Fulton attorneys' fees and costs, and dismissing, with prejudice, Plaintiffs' complaint in its entirety.  After careful review, we affirm.

The Maranos became employees of Fulton on December 15, 2008; they were hired as financial consultants for the bank.  In connection with

their employment, they entered into and executed offer letters (letters), new hire bonus letter (bonus letters), promissory notes (notes), non-solicitation and confidentiality agreements (agreements), and financial advisor agreements (advisor agreements) (collectively, "employment documents") with Fulton. The employment documents did not contain integration clauses. As set forth in their bonus letters and notes, Fulton loaned Frank Marano $554,125 and Donald Marano $1,329,746 – representing the value of Plaintiffs' last twelve months of commissions earned at their prior employer, Wachovia.[1] Fulton agreed to repay the debt by reducing and ultimately eliminating the note balance over the course of Plaintiffs' employment.[2]

On August 22, 2013, Plaintiffs terminated their employment with Fulton without notice. At the time of their termination, the Maranos had failed to pay the balance due under the notes. On August 22, 2014, Plaintiffs filed a complaint against Fulton alleging six counts, including fraud, negligent misrepresentation, breach of contract, promissory estoppel, unjust

---

[1] Prior to the fall of 2008, the Maranos were licensed securities and investment brokers at Wachovia.

[2] According to the Maranos, financial advisors typically execute promissory notes with their employers in which a bank, like Fulton, "would pay bonuses to the Maranos, the Maranos would conditionally agree to repay the bonuses as set forth in the promissory notes, but [the bank] would progressively reduce and ultimately eliminate the balance owing on the promissory notes during the course of the Maranos' employment with [the bank]." **See** Maranos' Complaint, 8/22/13, at 7.

enrichment, and declaratory judgment. Fulton filed preliminary objections based on improper venue and the case was transferred from Montgomery County to Lancaster County due to a forum selection clause in the parties' promissory notes. Fulton filed an answer and counterclaims for breach of the promissory notes and unjust enrichment.

On October 15, 2015, Fulton filed a summary judgment motion; Plaintiffs filed a response to the motion. The court held oral argument on the motion, after which it requested further briefing by the parties on the issue of "completeness" of a contract. On April 26, 2016, the court entered an order granting Fulton's summary judgment motion, dismissing the Plaintiffs' complaint, granting Fulton attorneys' fees and costs and awarding judgment in favor of Fulton in the amount of $300,151.04 (as against Frank Marano) and in the amount of $720,279.08 (as against Donald Marano).

Plaintiffs filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal in which they raise the following issues for our consideration:

> (1) The Honorable Lower Court erred in application of relevant law to the issues of "fraud in the inducement" and "fraud" raised in [the Plaintiffs'] complaint.
>
> (2) The Honorable Lower Court erred by granting Fulton's Motion for Summary Judgment and Dismissal when there existed genuine issues of fact and issues of law set forth in [the Plainiffs'] Complaint.
>
> (3) The Honorable Lower Court erred in granting Summary Judgment and Dismissal as to Count II[, negligent misrepresentation of the Plaintiffs' complaint].

(4)    The Honorable Lower Court erred in granting Summary Judgment and Dismissal as to Count III[, breach of contract,] of [the Plaintiffs'] Complaint.

(5)    The Honorable Lower Court erred in entering Summary Judgment and Dismissal as to Count IV[, promissory estoppel,] of [the Plaintiffs'] Complaint.

(6)    The Honorable Lower Court erred in entering Summary Judgment and Dismissal on Count V[, unjust enrichment,] of [the Plainiffs'] Complaint.

(7)    The Honorable Lower Court erred in entering Summary Judgment and Dismissal as to Count VI[, declaratory relief,] of [the Plaintiff's] Complaint.

(8)    The Honorable Lower Court erred in entering Summary Judgment on the Motion of Fulton on the promissory notes.

Our standard of review in cases of summary judgment is well-settled. This court will only reverse the trial court's entry of summary judgment where there was an abuse of discretion or an error of law. *Merriweather v. Philadelphia Newspapers, Inc.*, 684 A.2d 137, 140 (Pa. Super. 1996). Summary judgment is proper when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits demonstrate that there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Pa.R.C.P. 1035.2. In determining whether to grant summary judgment a trial court must resolve all doubts against the moving party and examine the record in a light most favorable to the non-moving party. *Id*.

Plaintiffs contend that in order to persuade them to leave their prior employer, Wachovia, and accept employment at Fulton, Defendants told them that Fulton was in the process of building an investment and securities

- 4 -

business that would soon be the leader in the banking and financial services industry. Plaintiffs also assert that they told Fulton that their income was substantially dependent upon referrals of bank customers with significant assets, and that they would not leave Wachovia unless Fulton could assure them that they would continue to receive a continuing and growing flow of referrals from Fulton's bank customers. In order to induce them to work at Fulton, Plaintiffs claim that Defendants represented they would "provide the significant referrals when [Plaintiffs] commenced employment and on [a] continuing basis thereafter." Plaintiffs' Brief, at 10.

It is well established that:

> Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence.
>
> ***Gianni v. Russell & Co.***, [] 126 A. 791, 792 ([Pa.] 1924) (citations omitted); ***see also Scott v. Bryn Mawr Arms, Inc.***, [] 312 A.2d 592, 594 ([Pa.] 1973). Therefore, for the parol evidence rule to apply, there must be a writing that represents the "entire contract between the parties." ***Gianni***, 126 A. at 792. To determine whether or not a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties[.]" ***Id.*** An integration clause

which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution. *See HCB Contractors*[ *v. Liberty Place Hotel Assoc.*], 652 A.2d [1278,] 1280 [(Pa. 1994)].

Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract. *See Bardwell v. Willis Co.*, [] 100 A.2d 102, 104 ([Pa.] 1953)[.] One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake. *See HCB Contractors*, 652 A.2d at 1279; *Bardwell*, 100 A.2d at 104. In addition, where a term in the parties' contract is ambiguous, "parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is created by the language of the instrument or by extrinsic or collateral circumstances." *Estate of Herr*, [] 161 A.2d 32, 34 ([Pa.] 1960); *see also Waldman v. Shoemaker*, [] 80 A.2d 776, 778 ([Pa.] 1951).

*PNC Bank v. Bluestream Tech., Inc.*, 14 A.3d 831, 841-42 (Pa. Super. 2010) (headnotes, footnotes and some citations omitted).

Moreover, while "[a]n integration clause stating the parties intend the writing to represent their entire agreement is a clear sign the writing expresses all of the parties' negotiations, conversations and agreements made prior to its execution," *DeArmitt v. New York Life Ins. Co.*, 73 A.3d at 589-90 (Pa. Super. 2013), its absence does not automatically subject the written agreement to parol evidence. *Kehr Packages v. Fidelity Bank,*

- 6 -

*N.A.*, 710 A.2d 1169, 1173 (Pa. Super. 1998). Rather, in the absence of an integration clause, a court must examine the text of the parties' agreement to determine its completeness. *Id.*

In its Pa.R.A.P. 1925(a) opinion, the trial court found: (1) the clear and unambiguous terms of the employment documents set forth the critical conditions of the parties' employment relationship which embodied the full intent of the parties and, thus, constituted a fully integrated contract; (2) the parol evidence rule applies and any of the parties' prior oral or written negotiations, including claims of fraudulent statements made by Fulton, were inadmissible; (3) the Maranos did not produce evidence to prove fraud in the inducement or execution; (4) the Maranos' negligent misrepresentation claim cannot be based upon unfulfilled promises to do acts in the future; (5) equitable theories of promissory estoppel and unjust enrichment cannot succeed where written agreements between the parties exist; (6) clear and unambiguous language of promissory notes and bonus letters set forth that Fulton agreed to pay amounts required to be repaid by the Maranos while they remained employed by Fulton and that upon termination from Fulton, the Maranos agreed to repay all unpaid amounts under the notes; (7) the Maranos admitted that they agreed to and signed all the employment documents, including the offer letters, upon their commencement of employment with Fulton; (8) that when they terminated their employment with Fulton in August 2013, the Maranos had failed to pay outstanding balances and interest due under the notes; and (9) any issue

relating to proper interest[3] to be charged on and any agreed-upon set-off against the principal balance of the promissory notes is properly raised at a future damages hearing.

After reviewing the parties' briefs, the certified record, issues raised on appeal, and relevant case law, we conclude that the trial court opinion, authored by the Honorable David L. Ashworth, cogently addresses the issues raised on appeal by the Maranos. We, therefore, rely upon Judge Ashworth's decision in affirming the trial court's grant of summary judgment in favor of Fulton. The parties are directed to attach a copy of Judge Ashworth's decision in the event of further proceedings in the matter.

Order affirmed.[4]

---

[3] Specifically, the Maranos base this claim on the provision in the parties' bonus letters indicating that "while the Promissory Note remains outstanding, in any calendar year that [the Maranos] generate a $100,000 increase in [their] recurring gross dealer concession ("GDC") . . . above [their] previous calendar year's recurring GDC, [Fulton] will make an additional payment on the Promissory Note equal to 13.33% of the original loan balance of the Promissory Note[.]" New Hire Bonus Letter, 12/17/08, at 2.

[4] In their reply brief, the Maranos claim that the trial court incorrectly concluded that the documents constituted a fully integrated contract between the parties. Specifically, they refer to the fact that the parties' promissory notes stated that "[n]either this letter, nor the existence of the New Hire Bonus, constitutes a contract of employment." We find this argument unpersuasive. **See Huegel v. Mifflin Construction Co.**, 796 A.2d 350 (Pa. Super. 2002) (where several instruments are made part of single transaction, they will be read together and each construed with reference to the other even if instruments executed at different times and do not in terms refer to each other). Moreover, it is "well settled in this
*(Footnote Continued Next Page)*

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/4/2017</u>

*(Footnote Continued)* ──────────

Commonwealth that the parol evidence rule applies to the obligations set forth in a promissory note [and that t]he limitation or enlargement of any of its provisions by an alleged oral agreement that varies, modifies, or destroys the terms of the instrument is prohibited by the parol evidence rule." ***Gitt v. Myers***, 417 A.2d 664 (Pa. Super. 1979). ***Compare Rose v. Food Fair Stores, Inc.***, 262 A.2d 851, 853 (Pa. 1970) ("purpose of parole evidence rule is . . . 'to preserve the integrity *of written agreements* by refusing to permit the contracting parties to attempt to alter the import of their contract through the use of contemporaneous [or prior] oral declarations.'") (emphasis added) ***with LeDonne v. Kessler***, 389 A.2d 1123, 1127 n.4 (Pa. Super. 1978) ("parol evidence rule, generally speaking, does not apply to receipts, letters, statements or books of account and other writings which do not purport to be a complete contract or vest or extinguish a legal right.").

Circulated 03/10/2017 11:36 AM

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
### CIVIL ACTION

FRANK MARANO and DONALD
MARANO

        v.         :      No. CI-15-02499

FULTON BANK, N.A., d/b/a FULTON
FINANCIAL ADVISORS and FULTON
FINANCIAL ADVISORS, INC.

### OPINION SUR PA.R.A.P. 1925(b)

BY:   ASHWORTH, J., JULY 15, 2016

Frank Marano and Donald Marano (the Maranos) have filed a direct appeal to the Superior Court of Pennsylvania from this Court's Order of April 26, 2016, granting the Motion for Summary Judgment filed by Fulton Bank, N.A., d/b/a Fulton Financial Advisors, and Fulton Financial Advisors, Inc. (Fulton), dismissing the Maranos' Complaint with prejudice in its entirety, entering judgment in favor of Fulton on the Counterclaims against Frank Marano in the amount of $300,151.04 plus accrued interest, and against Donald Marano in the amount of $720,279.08 plus accrued interest, and awarding Fulton its attorneys' fees and costs. This Opinion is written pursuant to Rule 1925(a) of Pennsylvania Rules of Appellate Procedure, and for the following reasons, this Court requests that this appeal be denied.

## I.    Procedural and Factual Background

Since this Court's decision went against the Maranos' favor, and because this is a summary judgment matter, I will accept only those relevant paragraphs from the statement of facts presented by Fulton which were either "admitted" to by the Maranos or conceded to be "not in controversy":

5.    On December 15, 2008, the Maranos joined [Fulton] from Wachovia Securities. *See* FINRA Broker Check Report, attached as Exhibit "A."

6.    In connection with the commencement of the Maranos' employment with [Fulton] . . . , on December 17, 2008, they each acknowledged, entered into and executed 'New Hire Bonus Letters' and Promissory Notes with [Fulton]. *See* Complaint at ¶¶ 23-24; *see also* [Fulton] Answer with New Matter and Counterclaims, attached as Exhibit "B" at Exhibits "C-D" and "H-I".

7.    They also entered into and executed Offer Letters, Nonsolicitation and Confidentiality Agreements, and Financial Advisor Agreements. *See* executed Offer Letters, attached as Exhibit "C" and Exhibit "B" at Exhibits "E-F" and "J-K".

. . .

9.    As set forth in the New Hire Bonus Letters and the Notes, Frank and Donald Marano each received loans in the amounts of $554,125 and $1,329,746, respectively. Id. at ¶ 93 and at Exhibits "D" and "I".

. . .

11.    Pursuant to the Notes, Frank Marano was to make quarterly payments of $13,853.12 plus interest over a period of 10 years and Donald Marano was to make quarterly payments of $33,243.65 plus interest over the same period. Id. at Exhibits "D" and "I" at ¶ 1(b).

. . .

13.    Under the Notes, an 'event of default' includes the failure to pay any installment of principal and/or interest or any other amount due within five days after payment is due. Id. at Exhibits "D" and "I" at ¶ 6(a).

14.    At any time after the occurrence of an event of default, [Fulton] may, without notice or demand, declare the entire unpaid principal balance of the Notes immediately due and owing. Id. at Exhibits "D" and "I" at ¶ 7.

2

15. Any costs or attorneys' fees incurred by [Fulton] in connection with any action under the Notes are recoverable from the Maranos. Id. at Exhibits "D" and "I" at ¶ 8.

16. By executing and delivering the Notes, the Maranos agreed to all of the terms and conditions of the Notes. Id. at ¶ 100. It is admitted that the Maranos agreed to and executed the Notes. *See* Complaint at ¶ 28.

. . .

21. Subsequent to entering into the Notes, acknowledging the terms of the New Hire Bonus Letters, and executing the Offer Letters, Nonsolicitation Agreements and Financial Advisor Agreements, [Fulton] provided Frank Marano and Donald Marano with the loans in the amounts of $554,125 and $1,329,746, respectively. *See* Exhibit "B" at ¶ 104.

22. Almost five years later, on August 22, 2013, the Maranos terminated their employment with [Fulton] without notice and immediately began new employment with [Morgan Stanley], where they each received another substantial up front loan in the amount of $766,350. Id. at ¶ 105; *see also* Exhibit "A" and the Maranos' Promissory Notes with [Morgan Stanley], attached hereto as Exhibit "D."

. . .

25. To date, the Maranos have failed to repay any of the amounts due under the Notes. . . . Id. at ¶ 108.

Fulton Motion for Summary Judgment at ¶¶ 5-7, 9, 11, 13-16, 21-22, 25. At the time of their resignations, the outstanding principal balance owed by Frank Marano was $300,151.04, and the outstanding principal balance owed by Donald Marano was $720,279.08. Id., Exhibit "B" at ¶ 109. As the Notes provide, interest accrued on the unpaid principal balance at a rate of interest per year equal to the mid-term applicable federal rate of interest as of December 17, 2008. Id., Exhibits "D" and "I" at ¶¶ 1(a) and 7.

On August 22, 2014, exactly one year after resigning from Fulton, the Maranos filed a Complaint in Montgomery County alleging claims for fraud, negligent misrepresentation, breach of contract, promissory estoppel, unjust enrichment and

3

declaratory judgment, and seeking release from all obligations under the Promissory Notes. Fulton filed Preliminary Objections based on improper venue due to the existence of a forum selection clause contained in the Notes, requiring all actions arising out of or related to the Notes to be brought in Lancaster County. On December 4, 2013, the Montgomery County Court sustained the Objections. The Maranos appealed the decision to the Superior Court. On October 29, 2014, the Superior Court affirmed the trial court decision.

On March 11, 2015, the case was transferred to Lancaster County. Fulton filed an Answer with New Matter and Counterclaims for breach of the Promissory Notes and unjust enrichment. After the pleadings were closed, Fulton filed a motion for summary judgment on October 15, 2015, claiming it was entitled to judgment as a matter of law on its Counterclaims for breach of the Promissory Notes and unjust enrichment to recover the amounts due pursuant to the Notes, and the Maranos' claims contained in their Complaint fail as a matter of law. The Maranos filed a response to the motion on December 4, 2015, claiming they made a sufficient showing to establish an existence of the essential elements of their case demonstrating genuine issues of material fact to be submitted to a jury. Briefs were filed by the parties, and oral argument of counsel was heard. Supplemental briefs were requested to address the question of what constitutes a "complete" agreement for purposes of determining whether a contract is integrated.

By Order dated April 26, 2016, Fulton's motion for summary judgment on the Counterclaims against the Maranos for breach of the Promissory Notes was granted as I found there was no genuine issue of material fact in dispute and Fulton was entitled to judgment as a matter of law on the Counterclaim for breach of the Promissory Notes. It

4

was further ordered that the Maranos' Complaint was dismissed with prejudice in its entirety.

The Maranos filed a timely appeal from this Order. Pursuant to my directive, the Maranos identified the following issues on appeal: (1) the trial court erred by granting the motion for summary judgment as to Count I ("fraud in the inducement" and "fraudulent misrepresentations"); (2) the trial court erred in concluding that (a) parol evidence was not admissible to supplement the content of written documents presented by Fulton in support of their motion for summary judgment, and (b) the documents executed by the Maranos constituted a complete integrated agreement barring the application of the parol evidence rule to the claims set forth in Count I; (3) the trial court erred in granting summary judgment as to Count II (negligent misrepresentation); (4) the trial court erred in granting summary judgment as to Count III (breach of contract); (5) the trial court erred in granting summary judgment as to Count IV (promissory estoppel); (6) the trial court erred in granting summary judgment as to Count V (unjust enrichment); (7) the trial court erred in granting summary judgment as to Count VI (request for declaratory relief); and (8) the trial court erred in granting summary judgment on the Promissory Notes.

## II.    Summary Judgment Standard of Review

The purpose of the summary judgment rule is to eliminate cases prior to trial where a party cannot make out a claim or defense after relevant discovery has been completed. **Miller v. Sacred Heart Hospital**, 753 A.2d 829, 833 (Pa. Super. 2000). Summary judgment is properly granted as a matter of law

5

(1)    whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

(2)    if, after the completion of discovery relevant to the motion. . ., an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury.

Pa. R.C.P. 1035.2. The adverse party who bears the burden of proof at trial must come forward with evidence essential to preserve his or her cause of action. Id., Note. If such a party fails to produce such essential evidence, the moving party is entitled to judgment as a matter of law. **Grandelli v. Methodist Hospital**, 777 A.2d 1138, 1143-44 (Pa. Super. 2001). However, "[the court] will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." **Evans v. Sodexho**, 946 A.2d 733, 738 (Pa. Super. 2008) (quotation omitted).

In reviewing a trial court's grant of summary judgment, the Superior Court is guided by the following scope and standard of review:

An appellate court may reverse the entry of a summary judgment only where it finds that the lower court erred in concluding that the matter presented no genuine issue as to any material fact and that it is clear that the moving party was entitled to a judgment as a matter of law. In making this assessment, we view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. As our inquiry involves solely questions of law, our review is *de novo*.

Thus, our responsibility as an appellate court is to determine whether the record either establishes that the material facts are undisputed or contains insufficient evidence of facts to make out a *prima facie* cause of action, such that there is no issue to be decided by the fact-finder. If there is evidence that would allow a fact-finder to render a verdict in favor of the non-moving party, then summary judgment should be denied.

6

**Reinoso v. Heritage Warminster SPE LLC**, 108 A.3d 80, 84 (Pa. Super. 2015) (*en banc*) (citation omitted). *See also* **Smith v. Township of Richmond**, 623 Pa. 209, 221, 82 A.3d 407, 415 (2013).

## III. Discussion

### A. Judgment as a Matter of Law on Fulton's Claim for Breach of the Promissory Notes

I will address the Maranos' last issue first: was it error for me to grant summary judgment on Fulton's Counterclaim for breach of the Promissory Notes. Under Pennsylvania law, to recover for breach of a promissory note, a plaintiff must establish: (1) the existence of a promissory note signed by the party from whom payment is sought; and (2) that the defendant failed to make the payments called for by the terms of the note. **McGuire Performance Solutions, Inc. v. Massengill**, 904 A.2d 971, 973-74 (Pa. Super. 2006). It is undisputed and admitted by the Maranos that they agreed to and executed the Notes, and that they failed to pay the outstanding balances and interest due on the Notes. *See* Complaint at ¶ 28 (". . .the Maranos agreed to the New Hire Bonus letters, executed the Promissory Notes, and commenced employment with [Fulton] on or about December 2008"); Maranos' Admissions or Controverting of Fulton's Allegations of Fact as to Fulton's Motion for Summary Judgment at ¶ 25 (". . . admitted . . . that monies have not been repaid under the Promissory Notes").

The Maranos claimed, however, that they were fraudulently induced into executing the Promissory Notes and New Hire Bonus Letters due to alleged oral

7

representations made by Fulton to take certain actions in the future. *See* Maranos'

Admissions or Controverting of Fulton's Allegations of Fact as to Fulton's Motion for

Summary Judgment at ¶ 31. To establish their claim, the Maranos argued that,

because of the absence of an integration clause in the contracts, they could introduce

evidence of these oral representations made by Fulton regarding the Notes and/or the

Maranos' employment. I rejected the Maranos' argument and ruled that such evidence

of pre-contractual oral statements allegedly made by Fulton would fail under the parol

evidence rule.[1] Thus, the issue on appeal is whether the parol evidence rule precluded

me from considering extrinsic evidence to the relevant documents.

In **Toy v. Metropolitan Life Ins. Co.**, 593 Pa. 20, 928 A.2d 186 (2007), our

Supreme Court explained the parol evidence rule. In particular, the Court held that

> where the parties, without any fraud or mistake, have deliberately
> put their engagements in writing, the law declares the writing to be
> not only the best, but the only evidence of their agreement[;] that
> [a]ll preliminary negotiations, conversations and verbal agreements
> are merged in and superseded by the subsequent written contract[;]
> and that unless fraud, accident, or mistake be averred, the writing
> constitutes the agreement between the parties, and its terms cannot
> be added to nor subtracted from by parol evidence.

Id. at 49, 928 A.2d at 204 (quotation marks and citation omitted). The Supreme Court

has further explained when the parol evidence rule should be applied:

> [F]or the parol evidence rule to apply, there must be a writing that
> represents the 'entire contract between the parties.' To determine
> whether or not a writing is the parties' entire contract, the writing

---

[1]"The applicability and effect of the parol evidence rule are properly considered in the context of a motion for summary judgment, and similarly, a motion for judgment on the pleadings." **Jay Fulkroad & Sons, Inc. V. Leitzel**, 2015 WL 7431215, *4 (Pa. Super., Mar. 31, 2015) (*citing* **Coal Operators Casualty Co. v. Charles T. Easterby & Co.**, 440 Pa. 218, 221, 269 A.2d 671, 672-73 (1970)).

8

must be looked at and 'if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the [parties'] engagement, it is conclusively presumed that [the writing represents] the whole engagement of the parties. . . .'

. . .

Once a writing is determined to be the parties' entire contract, the parol evidence rule applies and evidence of any previous oral or written negotiations or agreements involving the same subject matter as the contract is almost always inadmissible to explain or vary the terms of the contract. One exception to this general rule is that parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake.

**Yocca v. Pittsburgh Steelers Sports, Inc.,** 578 Pa. 479, 498, 854 A.2d 425, 436-37 (2004).

Initially, the court must determine as a question of law whether a writing is the entire contract between the parties so that the parol evidence rule applies. **Haagen v. Patton,** 193 Pa. Super. 186, 191, 164 A.2d 33, 353 (1960). In the instant case, the Promissory Notes and New Hire Bonus Letters do not contain integration clauses.[2]

---

[2]While integration is presumed if the agreement includes an integration clause, "its absence does not automatically subject the written agreement to parol evidence." **Kehr Packages, Inc. v. Fidelity Bank, N.A.,** 710 A.2d 1169, 1173 (Pa. Super. 1998) (*citing* **International Milling Co. v. Hachmeister Inc.,** 380 Pa. 407, 417, 110 A.2d 186, 191 (1955) (holding that "the presence of an integration clause cannot invest a writing with any greater sanctity than the writing merits....")). "Rather, in the absence of an integration clause, the court 'must examine the text [of the agreement] to determine its completeness.'" Id. at 1173-74 (*quoting* **Henry v. First Federal Savings & Loan Assoc.,** 313 Pa. Super. 128, 136, 459 A.2d 772, 776 (1983) (affirming summary judgment and finding evidence of alleged prior oral representations were barred by the parol evidence rule upon finding that even in absence of integration clause, written loan agreement was complete as to such matters); *citing* **Gemini Equipment Co. v. Pennsy Supply, Inc.,** 407 Pa. Super. 404, 595 A.2d 1211 (1991) (barring evidence of alleged contemporaneous oral agreement to vary terms of written agreement; despite absence of integration clause, the writing was fully integrated since it unambiguously detailed the parties' rights and obligations)).

9

Therefore, I had to determine whether these writings were the integrated, final and complete expression of the parties' agreement. *See* **Kehr**, 710 A.2d at 1173-74.

In my analysis, I considered the following relevant documents executed by the parties: the December 10, 2008 Offer Letters[3]; the Promissory Notes; the New Hire Bonus Letters; and the Non-Solicitation and Confidentiality Agreements.[4] The Maranos claimed that "such documents, even read together, do not represent all of the terms of the Maranos' employment." Maranos' Memorandum in Opposition to Motion for Summary Judgment at 8. I, however, found that these four sets of documents, as well as the other agreements/policies incorporated therein, set out the critical terms of the parties' agreement as outlined by Fulton:

> The Offer Letters provide that the Maranos' entitlement to commissions, other compensation and benefits are covered by [Fulton's] Advisor Compensation Plan . . ., [Fulton's] policies in effect at the time and the normal benefits programs available to [Fulton]. [Fulton's] Advisor Compensation Plan sets forth the calculation of the Maranos' compensation, including provisions regarding: 1) qualifying grid production; 2) requirements for deferred compensation; 3) expense account allowances; 4) the Maranos' titles; 5) the error policy; 6) the minimum draw; 7) grid rate adjustments; 8) mutual fund trailers; 9) timing of trailer revenue; 10) timing of gross revenues on fee-based accounts; 11) trust/insurance; 12) institutional accounts; 13) employee terminations; and 14) direct business.
> The Offer Letters also contain provisions governing: 1) the

---

[3]The Maranos argued that the terms contained in the Offer Letters were simply an "offer" and were not incorporated into any subsequent written contract. Maranos' Memorandum in Opposition to Motion for Summary Judgment at 8. To the contrary, the Maranos accepted the offers by signing the Offer Letters, thereby making the terms contained in the Offer Letters their terms of employment. *See* Fulton's Supplemental Brief, Exhibit "A".

[4]Our Superior Court has long stated that "[w]here several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other." **Huegel v. Mifflin Construction Co.**, 796 A.2d 350, 354-55 (Pa. Super. 2002) (*quoting* **Neville v. Scott**, 182 Pa. Super. 448, 127 A.2d 755, 757 (1957)).

10

The Offer Letters also contain provisions governing: 1) the calculation of the Maranos' compensation for their first year of employment; 2) the Maranos' work schedule; 3) branch assignments; 4) transitional bonuses (which specifically incorporate the Promissory Notes); 5) entitlement to additional bonuses; 6) licenses and registration regulatory requirements, policies and procedures; 7) arbitration; 8) the agreements regarding employment of the Maranos' team; 9) COBRA provisions; 10) other miscellaneous terms of the Maranos' employment. Importantly, the Offer Letters also specifically incorporate and enclose the Nonsolicitation and Confidentiality Agreements.

The December 17, 2008 New Hire Bonus Letters spell out the specific terms of the Maranos' New Hire Bonus and specifically incorporate and attach the Promissory Notes and the Nonsolicitation and Confidentiality Agreements.

The Promissory Notes address all critical terms of the parties' agreement regarding the Notes, as they contain provisions regarding: 1) payment of principal and interest; 2) prepayment of principal; 3) payment of installment principal and interest; 4) application of payments; 5) late charges; 6) events of default; 7) remedies upon default; 8) costs and attorneys' fees; 9) the Maranos' waivers; 10) [Fulton's] waivers; and 11) other miscellaneous terms, including that the Notes cannot be amended unless in writing. It is undisputed that the Notes were not amended in writing.

Finally, the Nonsolicitation and Confidentiality Agreements set forth the parties' agreement regarding the Maranos' obligations to not disclose confidential information, including the definition of same, and to not solicit certain customers for certain periods of time after termination of their employment, as well as the remedies for any breaches of these Agreements.

Fulton's Supplemental Brief in Support of Motion for Summary Judgment at 5-6

(citations to record omitted).

Given the extent of the critical and material terms detailing the parties' employment rights and obligations as set forth in these numerous writings, the Maranos' contention that "[n]ecessary terms such as compensation, duties, place of employment, work hours, vacations and general expectations of performance are not addressed in any written contract executed by the Maranos" (Maranos' Memorandum in Opposition to Motion for Summary Judgment at 8) is baseless and disingenuous.

11

Moreover, the suggestion that "the 'Wachovia Model'[5] was an essential term to be included in a written employment agreement" between the parties and that the omission of this term renders their agreement incomplete is also meritless. The very absence of this term in the various writings suggests that an agreement was never reached as to Fulton's obligation to implement this exact banking model and referral process. In fact, the Offer Letters specifically state that Fulton makes no guarantee about the Maranos' book of business, ability to produce business or value of their book of business. *See* Motion for Summary Judgment, Exhibit "C" at ¶ 3.

Based on this record, I concluded that the terms and conditions of the parties' employment relationship were reduced to various writings, which were clear and unambiguous, and which embodied the full intent of the parties, thus, creating a fully integrated contract. Accordingly, the parol evidence rules applies and any evidence of any previous oral or written negotiations or agreements involving the same subject matter as is contained in these documents is generally inadmissible.

One exception to this general rule is that "parol evidence may be introduced to vary a writing meant to be the parties' entire contract where a party avers that a term was omitted from the contract because of fraud, accident, or mistake." **Yocca**, 578 Pa. at 498, 854 A.2d at 437. Here, the Maranos contend that they were fraudulently induced to enter into the New Hire Bonus Letters and Promissory Notes due to alleged

---

[5]According to the Maranos, "Wachovia Bank had developed a banking model which historically was a successful model which resulted in Financial Advisors being placed in one or more branches of Wachovia Bank and acting as Financial Advisors for the sale of securities or other products to customers of Wachovia Bank." Maranos' Memorandum in Opposition to Motion for Summary Judgment at 4-5. This model is now known as the "Wachovia Bank Model." Id.

12

oral misrepresentations made by Fulton to take certain actions in the future. Specifically, the Maranos claim that they were induced to agree to the terms of the New Hire Bonus Letters and to execute the Promissory Notes as a result of Fulton's alleged promises to: (1) provide referrals from bank customers in the future; (2) "create and aggressively grow an investment and securities business that would be a leader in the industry"; and (3) obtain the necessary expertise and personnel to accomplish these goals in the future. *See* Complaint at ¶¶ 9-12.

With regard to the fraud exception to the parol evidence rule, our Supreme Court stated in **Toy**, *supra*, that the Court

> has restricted the exception to allegations of fraud in the execution of a contract, and has refused to apply the exception to allegations of fraud in the inducement of a contract. We stated that 'while parol evidence may be introduced based on a party's claim that there was fraud in the execution of a contract, *i.e.*, that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.*, that an opposing party made false representations that induced the complaining party to agree to the contract.'
> [**Toy**, 593 Pa. at 49, 928 A.2d] at 204-205, *quoting* **Yocca**, 854 A.2d at 437 n. 26 (citations omitted)). 'This is so because in the fraud in the execution context, the allegation is that the written agreement *is not* the expression of the parties' true and complete contractual intent inasmuch as terms that were agreed to by the parties were omitted from that writing through fraud.' *Id.* at 206 n. 24. '[W]hen fraud in the execution is alleged, representations made prior to contract formation are not considered superseded and disclaimed by a fully integrated written agreement, as they are when fraud in the inducement is asserted.' *Id.* at 206-207.

**Boehm v. Riversource Life Ins. Co.**, 117 A.3d 308, 326 (Pa. Super. 2015) (emphasis in original).

13

1072a

Thus, under the well-settled principles embodied in the parol evidence rule, the Maranos are precluded from raising the defense of fraudulent inducement. Further, they made no showing of fraud in the execution. Therefore, it was proper to disregard any evidence other than the executed documents identified above, which are clear and unambiguous, and constitute the parties' entire, integrated agreement.

With respect to Fulton's Counterclaim, the Promissory Notes and New Hire Bonus Letters contain clear and unambiguous language and are reasonably susceptible of only one meaning – Fulton agreed to pay the amounts required to be repaid by the Maranos pursuant to the Notes while the Maranos remained employed by Fulton and upon termination of the Maranos' employment with Fulton, the Maranos became responsible for repayment of all unpaid amounts under the Notes. *See* Fulton Motion for Summary Judgment at Exhibit "B" at Exhibits "C" and "H"; *see also* Complaint at ¶¶ 25-26. The Maranos admit that they (1) "agreed to the New Hire Bonus letters, executed the promissory notes, and commenced employment with [Fulton]," (2) terminated their employment with Fulton on August 22, 2013, and (3) have failed to pay the outstanding balances and interest due under the Notes. *See* Complaint at ¶¶ 28, 53; Maranos' Admissions or Controverting of Fulton's Allegations of Fact as to Fulton's Motion for Summary Judgment at ¶ 25.

As there was no genuine issue of material fact as to the existence of the Promissory Notes signed by the Maranos, and the Maranos' subsequent breach of those Notes, Fulton was entitled to judgment as a matter of law and the Maranos were

14

required to pay the full outstanding principal and accrued interest, as well as Fulton's attorneys' fees, as required by the Notes.[6]

**B.    Judgment as a Matter of Law on the Maranos' Claims Alleged in the Complaint**

In their Complaint, the Maranos allege claims for "fraud in the inducement" and "fraudulent misrepresentations" (Count I), negligent misrepresentation (Count II), breach of contract (Count III), promissory estoppel (Count IV), unjust enrichment (Count V), and declaratory relief (Count VI). Based on the undisputed facts of record, these claims fail as a matter of law.

In Count I, the Maranos allege fraud in the inducement and fraudulent misrepresentations related to alleged statements made by Fulton to the Maranos, both prior to their employment and after their employment. A claim of negligent misrepresentation based upon the same alleged statements is made in Count II of the Maranos' Complaint. These alleged statements by Fulton to (1) provide referrals from bank customers in the future, (2) "create and aggressively grow an investment and securities business that would be a leader in the industry," and (3) obtain the necessary expertise and personnel to accomplish these goals in the future (*see* Complaint at ¶¶ 9-12), relate to future intentions. It is well-settled in Pennsylvania that the breach of a

---

[6]The Maranos argue on appeal that there existed genuine issues of material fact as to the amount of interest charged by Fulton to Appellants under the Promissory Notes. *See* Statement of Errors at ¶ 8. The amount of interest due under the Promissory Notes would have been addressed in the assessment of damages hearing that was scheduled in this case. Such damages need not be submitted to a jury for determination.

15

promise to do something in the future is not actionable in fraud. **Ira G. Steffy & Son, Inc. v. Citizens Bank of Pennsylvania,** 7 A.3d 278, 290 (Pa. Super. 2010).

Likewise, claims for negligent misrepresentation must be based on misrepresentations regarding present facts, not unfulfilled promises to do acts in the future. *See* **Bennett v. Itochu International, Inc.,** 682 F.Supp.2d 469, 480-81 (E.D. Pa. 2010) ("At the time that a statement is made regarding what the speaker intends to do in the future, the speaker either intends at the moment to take the action he is promising or not. The speaker cannot be negligent as to his future intentions.").[7] Consequently, an allegation that a defendant eventually failed to keep a promise is insufficient to support a claim for negligent misrepresentation. The alleged misrepresentations identified by the Maranos were promissory in nature and related to future events as opposed to present representations of existing facts and, thus, were insufficient to support a claim for fraudulent and negligent misrepresentation.

---

[7]Although Pennsylvania case law is somewhat sparse on the specific question of whether a negligent misrepresentation claim may be based on a future event, the overwhelming weight of authority from jurisdictions that have explicitly decided the issue is that such claims cannot state a cause of action for negligent misrepresentation. *See, for example,* **McAlister v. Citibank,** 171 Ariz. 207, 215, 829 P.2d 1253, 1261 (App. 1992); **Stockton Mortgage, Inc. v. Tope,** 183 Cal.Rptr.3d 186, 203, 233 Cal.App.4th 437, 458 (2014); **High Country Movin' Inc. v. U.S. West Direct Co.,** 839 P.2d 469, 471 (Colo.App. 1992); **Bithoney v. Fulton-DeKalb Hospital,** 313 Ga.App. 335, 343, 721 S.E.2d 577, 583-84 (2011); **Abazari v. Rosalind Franklin University,** 396 Ill.Dec. 611, 620, 40 N.E.3d 264, 273 (2015); **Spragins v. Sunburst Bank,** 605 So.2d 777, 780 (Miss. 1992); **Massie v. Colvin,** 373 S.W.3d 469, 472 (Mo.App.S.D. 2012); **WLW Realty Partners, LLC v. Continental Partners VIII, LLC,** 381 Mont. 333, 340, 360 P.3d 1112, 1116-17 (2015); **Sheth v. New York Life Insurance Co.,** 709 N.Y.S.2d 74, 75 (N.Y.App.Div. 2000); **Kondrat v. Morris,** 118 Ohio App.3d 198, 207, 692 N.E.2d 246, 251-52 (1997); **Fields v. Melrose Ltd. Partnership,** 312 S.C. 102, 105, 439 S.E.2d 283, 285 (Ct.App. 1993); **BCY Water Supply Corp. v. Residential Investments, Inc.,** 170 S.W.3d 596, 603 (Tex.App.-Tyler 2005); **Chestnut v. Goodman,** 59 V.I. 467, 476-77 (2013).

16

The Maranos further argue on appeal that it was error to dismiss their claim for breach of contract related to an alleged series of oral agreements between them and Fulton. *See* Statement of Errors at ¶ 4. As set forth above, this claim fails as a matter of law due to the existence of clear and unambiguous executed contracts that constituted the parties' entire, integrated employment agreement. The parol evidence rule bars the Maranos from alleging oral representations to modify the terms of that agreement.

Lastly, the Maranos' alternative theories of promissory estoppel and unjust enrichment also fail as a matter of law because written agreements between the parties exist. In Pennsylvania, promissory estoppel is an equitable remedy to be applied only in the absence of a contract. **Crouse v. Cyclops Industries**, 560 Pa. 394, 402-03, 745 A.2d 606, 610 (2000). Similarly, "the quasi-contract theor[y] of . . . unjust enrichment, by definition, impl[ies] that no valid and enforceable written contract exists between the parties." **Shafer Electric & Construction v. Mantia**, 67 A.3d 8, 13 (Pa. Super. 2013). As the relationship between the parties in the instant case is founded upon unambiguous, clear and written agreements, the Maranos' theories of promissory estoppel and unjust enrichment fail as a matter of law.

## IV. Conclusion

For the reasons set forth above, it is respectfully requested that the appeal of Frank and Donald Marano be denied.

Accordingly, I enter the following:

17

## IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
## CIVIL ACTION

FRANK MARANO and DONALD MARANO

       v.

FULTON BANK, N.A., d/b/a FULTON FINANCIAL ADVISORS and FULTON FINANCIAL ADVISORS, INC.

No. CI-15-02499

PROTHONOTARY'S OFFICE LANCASTER, PA.

2016 JUL 15 PH 3: 30

ENTERED AND FILED

## ORDER

AND NOW, this 15ᵗʰ day of July, 2016, the Court hereby submits this Opinion pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure.

BY THE COURT:

DAVID L. ASHWORTH
JUDGE

ATTEST: Audrey Conrad
Deputy

Copies to:    Arthur C. Koski, Esquire, 101 North Federal Highway, Suite 602, Boca Raton, FL 33432
Joseph A. Dougherty, Esquire, Buchanan Ingersoll & Rooney, PC, Two Liberty Place, 50 South 16ᵗʰ Street, Suite 3200, Philadelphia, PA 19102

NOTICE OF ENTRY OF ORDER OR DECREE PURSUANT TO PA. R.C.P. NO: 236
NOTIFICATION - THE ATTACHED DOCUMENT HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 7-8-16